# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICK L. RICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-196-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Rick L. Rice requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 20, 1953, and was fifty-five years old at the time of the administrative hearing.  (Tr. 41).  He received his GED, and has worked as a feeder, machine packager, kitchen helper, and construction worker I.  (Tr. 41, 61).  The claimant alleges that he has been unable to work since September 12, 2006, due to an acoustic neuroma, equilibrium problems, arthritis in his left ankle, bad left knee, damaged right shoulder, broken left collar bone, pins and plates in his left ankle, dizziness, and thyroid problems.  (Tr. 157).

## Procedural History

On September 13, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His applications were denied.  ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 10, 2009.  (Tr. 12-22).  The Appeals Council granted the claimant's request for review, and found that the claimant became disabled on September 19, 2008 when he attained advanced age, but that he was not disabled prior to September 19, 2008.  The Appeals Council's opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.  The claimant appeals only that portion of the Appeals Council decision finding him not disabled prior to September 19, 2008.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 414.967(b), with the additional limitations of avoiding unprotected heights and moving machinery, as well as no climbing ladders/ropes/scaffolds or performing jobs that require balancing.  (Tr. 26).  The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, housekeeper, cashier toll collector, and sales attendant.  (Tr. 31).

**Review**

The claimant contends that the ALJ erred in the portion of his opinion that found the claimant not disabled:  (i) by improperly evaluating the opinions of his treating physician, Dr. Wayne Berryhill; (ii) by formulating an RFC not based on substantial evidence, and (iii) by erring in his credibility analysis.  The Court finds the claimant's first contention persuasive for the following reasons.

The ALJ found the claimant had the severe impairments of acoustic neuroma, mild degenerative joint disease of the left ankle status post surgery, and status post umbilical hernia repair.  (Tr. 24).  The relevant medical evidence reveals that on June 22, 2006, the claimant reported to Carl Albert Hospital with complaints of a dizzy spell that had lasted two to three weeks and had not resolved.  (Tr. 282).  He later stopped working due to these dizzy spells, which were also accompanied by gradual hearing loss.  (Tr. 423, 474-

-4-

475).  In April 2007, the claimant underwent surgery for a suspected acoustic neuroma with Dr. Berryhill and Dr. Eric H. Sincoff, but there was no evidence of a tumor during the surgery; rather, doctors found a large vein and artery filling the auditory canal.  (Tr. 221-228).  The vestibular nerve was cut to treat the patient's symptoms, but the large vein was left intact.  (Tr. 418).  Therapist Megan Clem conducted testing of the claimant using the dynamic gait index and Berg Balance, and results were essentially normal.  (Tr. 544-550).  At a June 2007 check-up, the claimant reported that he could not hear out of his left hear at all.  The claimant was sent to vestibular rehab through July 30, 2007.  (Tr. 464-467).  Following his rehab, the patient reported improved balance but continued dizziness, and the physical therapist noted on June 28 that the claimant had not been fully compliant.  (Tr. 464).  Additionally, he reported a continued constant dizziness, but that it was not as severe as it was before the surgery.  (Tr. 265).  Testing revealed severe to profound sensorineural hearing loss, with a significant decrease since testing performed in October 2006.  (Tr. 266).  At an October 22, 2007 check-up of the claimant's hearing, he reported that it was about the same post-surgery and he had regained his equilibrium.  Following the hearing evaluation, the impression was that that he had severe to profound sensorineural hearing loss, with some improvement.  (Tr. 251).

In November 2007, a state reviewing physician found that the claimant could perform medium work, with environmental limitations of not working around hazards.  (Tr. 364-370).  On February 21, 2008, Dr. Berryhill sent a letter stating that he had last treated the claimant on September 12, 2007, that the claimant continued to report disequilibrium, and that the claimant would remain unable to work regardless of any

rehabilitation. (Tr. 409). On October 29, 2008, Dr. Sincoff examined the claimant and prepared a letter to the claimant's other treating physicians, stating that the claimant was a year and a half out from his surgery, that he had good facial function but little to no hearing in the left ear, that he might have a conductive hearing loss, and that he continued to have equilibrium problems that had improved very little since the surgery. Dr. Sincoff concluded that he had nothing surgically to offer the claimant. (Tr. 411). In February 2009, the claimant reported that he had been to the gym one month previously and had tried boxing/punching bag which had caused him elbow pain and he had not been back to the gym. (Tr. 480). On May 21, 2009, Dr. Berryhill again examined the claimant, with an impression of a stable enhancing region of the left internal auditory canal, and he did not recommend further surgical intervention. (Tr. 528-529).

The claimant testified at the administrative hearing that he has problems with his equilibrium and with walking, stating that it felt like he staggered when he walked, and that "everything moves on me." (Tr. 44). He recounted his April 2007 surgery and subsequent hearing loss in his left ear, that the dizziness was nearly constant, and that he had attended physical therapy following his surgery but did not improve. (Tr. 45-46). As to his mental impairments, the claimant testified that he was prescribed medication for depression because he had become "short-fused," had problems with concentration, and had problems sleeping. (Tr. 48). He stated that he could stand at most ten minutes because he would sway back and forth, and that he could walk about a mile, "but it's pretty jerky as far as, you know, like my vision[.]" (Tr. 50). Additionally, he stated that he had problems bending over and squatting. (Tr. 50-51). As to his activities, he stated

that he tries to keep his house clean, and that he cleans his parents' house once a week because they pay him and that gives him some money. (Tr. 51-52). He testified that he had attempted to wear a hearing aid in his left ear, but had stopped because it did not improve his hearing. (Tr. 53). Two separate times at the hearing, the claimant discussed his physical therapy treatment as to his balance and equilibrium, stating that his equilibrium did not improve after four months of physical therapy and that he used a cane after the surgery but physical therapy improved his balance "a little bit" so that he did not have to use a cane. (Tr. 46, 53).

The ALJ summarized the claimant's testimony and the medical evidence. The ALJ also noted Dr. Berryhill's opinion that the claimant was unable to work, but rejected that opinion as it related to the ultimate finding of disability, and found that "he did not have the benefit of reviewing the other medical reports contained in the current record," including "evidence that treatment has been generally successful in controlling claimant's symptoms." (Tr. 30). Additionally, the ALJ stated that the claimant had admitted at the hearing that physical therapy had helped with his balance and he no longer needed a cane. (Tr. 30).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering

-7-

the following factors:  (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion.  *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so."  *Id.* at 1301 [quotations and citations omitted].  In sum, it must be "clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians.  Dr. Berryhill expressed such an opinion in evaluations of the claimant.  The ALJ rejected Dr. Berryhill's opinion as inconsistent with other medical evidence, and despite clearly stating the factors he was to apply in his analysis, he failed to specify the inconsistencies or apply any of the relevant factors to Dr. Berryhill's opinion and treatment records.  *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted]; *Langley*, 373 F.3d at 1123

("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300.  In any event, even if the opinion expressed by Dr. Berryhill *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527.  *See Langley*, 373 F.3d at 1119.  *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted].  *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.  Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").  The ALJ failed to perform the proper analysis here.

Furthermore, although as noted above the ALJ was not required to give controlling weight to the opinions of Dr. Berryhill that the claimant was completely unable to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement

by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the ALJ nevertheless *was* required to determine the proper weight to give these opinions by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ rejected Dr. Berryhill's opinion as a finding within the province reserved to the Commissioner and misconstrued the claimant's testimony as finding that his balance had returned following physical therapy as a means to reject Dr. Berryhill's opinion. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ neither performed the necessary analysis nor specified the weight he was assigning to the treating physicians' opinions that the claimant was disabled.

Because the ALJ failed to properly analyze the weight due to the opinion of Dr. Berryhill, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental

-10-

RFC, the ALJ should re-determine what work, if any, he can perform and ultimately whether he is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 18th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma